# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**RAYMOND M. PIERCE,**
           **Plaintiff,**

    **v.**                                                      **Case No. 07-C-614**

**UNIVERSITY OF WISCONSIN-MILWAUKEE,**
           **Defendant.**

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I. PROCEDURAL HISTORY**

On July 3, 2007, Raymond M. Pierce ("Pierce"), proceeding pro se, filed a complaint wherein he alleged that he was discharged from his employment with the University of Wisconsin—Milwaukee ("UWM") because of his gender, in violation of 42 U.S.C. § 2000e-2(a). Following a period for discovery, on April 29, 2008 UWM filed a motion for summary judgment. (Docket No. 27.) Although UWM complied with Civil L.R. 56.1 and informed Pierce of the local rules applying to the motion, Pierce has failed to respond to UWM's motion for summary judgment. The pleadings on UWM's motion are closed and the matter is ready for resolution. The parties have previously consented to the full jurisdiction of a magistrate judge.

**II. FACTS**

Pierce was hired by UWM, a public university, as a limited term fiscal clerk in August of 1993. (Compl., Docket No. 1 at 3.) He received favorable performance reviews, was hired as a full time employee, and was eventually promoted. (Docket No. 1 at 3.) He worked as a cashier in the Bursar's office, which is the office in UWM that handles many of the financial matters for the university. (Def. Prop. Find. Fact, Docket No. 29 at 3-4, ¶10.)

In June of 2000, Pierce's supervisor, Michelle Schartner ("Schartner") evaluated his job performance and indicated that Pierce was having problems with attendance, communication, and training. (Docket No. 29 at 4, ¶14.)

On June 4, 2001, UWM hired Laura Bergevain ("Bergevain") as Pierce's new supervisor. Almost immediately, Bergevain began noticing performance problems with Pierce. (Docket No. 29 at 5, ¶19.) For example, Pierce made derogatory comments about a customer, (Docket No. 29 at 5-6 ¶21), and when told by his superior to stop this behavior, Pierce disregarded this instruction, (Docket No. 29 at 6, ¶22.) When Pierce was observed playing a computer game while a customer was attempting to ask him a question, Bergevain told him to pay attention to his customers and Pierce sarcastically responded that he was "multitasking." (Docket No. 29 at 6, ¶23-24.)

On June 25, 2002, using an evaluation form that Pierce alleges was improper, Bergevain gave Pierce an unfavorable performance review. (Docket No. 1 at 3; Docket No. 29 at 6-7, ¶¶27-29.) Pierce unsuccessfully complained about this unfavorable performance review. (Docket No. 1 at 4.) Pierce alleges that this improper performance review is indicative of discrimination based upon sex. (Docket No. 1 at 4.) UWM's Department of Human Resources recommended that Pierce be placed on a Concentrated Performance Evaluation Program. (Docket No. 29 at 7, ¶29.) However, the Bursar's Office chose not to pursue this option and instead elected to simply continue to monitor Pierce's performance. (Docket No. 29 at 7, ¶30.)

Around this time period, Piece also twice took medical leave and at times was requested to provide doctor's excuses. (Docket No. 29 at 9, 11, ¶¶39-43, 52-54.)

Problems with Pierce's performance continued, including, for example, numerous problems processing credit card transactions, (Docket No. 29 at 7-8, ¶¶32-37), inappropriate behavior in front of customers, (Docket No. 29 at 7 at ¶32), and making threatening statements aimed at his

supervisor which were referred to the UWM Police Department, (Docket No. 29 at 8-9, ¶¶38, 44-45).

In November of 2003, Pierce received another unfavorable review that noted a number of performance problems such as low productivity, unacceptable transaction processing errors, failure to secure checks in the vault at the end of the workday, inappropriate use of the computer resources, providing customers with inaccurate information, poor customer service in answering the telephone and dealing with face-to-face customers, lack of proficiency in computer software, poor attendance, and inadequate professionalism. (Docket No. 29 at 10, ¶47.) As a result of this unfavorable review, Pierce was placed into a Concentrated Evaluation Program in an effort to improve his performance. (Docket No. 1 at 5; Docket No. 29 at 10-11, ¶¶48-51.)

This program included monthly meetings with Pierce and extensive written guidance. (Docket No. 29 at 12-13, ¶¶55-58.) Rather than improving, Pierce's performance deteriorated during this period. (Docket No. 29 at 13-16, ¶¶58-69.)

Therefore, at the end of this 6-month CEP period, Bergevain recommended to her superiors that Pierce be terminated. (Docket No. 29 at 16-17, ¶¶70-71.) On August 19, 2004, UWM sent Pierce a letter, signed by Suzanne Weslow ("Weslow"), who was the Associate Vice Chancellor of Administrative Affairs, and was the person who made the ultimate decisions regarding Pierce's employment (Docket No. 29 at 4, ¶12), and Bergevain. The letter notified Pierce that he was being terminated for "failure to meet the departmental performance standards for your position during the period of your Concentrated Performance (CPE) Program." (Docket No. 1 at 5; Docket No. 29 at 17, ¶¶73.)

Pierce filed a grievance challenging his termination, (Docket No. 29 at 17, ¶74), which was rejected by the Labor Relations Coordinator on November 24, 2004, (Docket No. 29 at 17, ¶76.)

Allegedly further indicative of sex discrimination is the fact that Pierce was required to submit doctor excuses whenever he was absent due to illness. (Docket No. 1 at 4.) Pierce alleges that under the union contract this is required only if a person is designated as a sick leave abuser, which he was not. (Docket No. 1 at 4.) Further, a female co-worker was not required to submit doctor's excuses when she was sick. (Docket No. 1 at 4.) This female co-worker was hired directly into the position Pierce had to be promoted into and she was allegedly never assigned the additional duties the were required of Pierce. (Docket No. 1 at 4.) She was allegedly also late for work without consequence whereas when Pierce was late his pay was reduced. (Docket No. 1 at 5.) This female employee received overtime despite Pierce's seniority. (Docket No. 1 at 5.) At the time Bergevain was hired, the office staff was roughly evenly split between men and women, whereas when Pierce was terminated, the office was entirely female. (Docket No. 1 at 5.)

**III. SUMMARY JUDGMENT STANDARD**

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Material facts are those facts which, under the governing substantive law, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323. The moving party satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving

party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

**IV. ANALYSIS**

> Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminating against any individual with respect to [ ] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1)(1994). Two methods exist for proving that an employer violated this prohibition. Troupe v. May Dept. Stores Co., 20 F.3d 734, 736 (7th Cir. 1994) (explaining direct and circumstantial evidence in discrimination cases). The first is by direct evidence.

Emmel v. Coca-Cola Bottling Co., 95 F.3d 627, 629 (7th Cir. Ill. 1996). Because employers are ordinarily careful to never say things such as, "I am firing you because of your gender," a plaintiff will generally be unable to prove a claim by way of the direct method of proof. Id. (citing Castleman v. Acme Boot Co., 959 F.2d 1417, 1420 (7th Cir. 1992)). Therefore, in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court articulated a second means by which a plaintiff may prove discrimination, an indirect method. "Under this method, a Title VII plaintiff has the burden of establishing a prima facie case of unlawful discrimination." Id. The plaintiff establishes a prima facie case if he can demonstrate that (1) he was a member of a protected class; (2) he was meeting the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) the employer treated a similarly situated person outside the

plaintiff's protected class more favorably. <u>Cullen v. Indiana University Board of Trustees</u>, 338 F.3d 693, 704 (7th Cir. 2003).

> "Once the plaintiff has established such a case, an inference of discrimination exists and the burden of production shifts to the defendant employer to 'clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.' <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 507 (1993) (quotations omitted). Once this burden of production is met, any inference of discrimination evaporates. To prove unlawful discrimination at this stage, the plaintiff must demonstrate to the jury that the reason proffered by the employer was mere pretext, an explanation designed to obscure the unlawful discriminatory employment action.

<u>Emmel</u>, 95 F.3d at 629.

The record is devoid of even an allegation of direct evidence of discrimination, and therefore, the only method available to Pierce is the indirect method of proof. However, Pierce is unable to prevail under this method of proof either because the undisputed evidence demonstrates that Pierce was not meeting the legitimate expectations of his employer. As outlined above, there are many examples of deficiencies in Pierce's job performance, beginning even before Bergevain became his supervisor.

Thus, in light of these documented deficiencies, the burden shifts back to Pierce to demonstrate that these deficiencies were simply a pretext for the defendant's adverse employment actions. Pierce has failed in this regard. Even though he has failed to respond to the defendant's motion, or contest the proposed findings of fact, the court must still independently review the record for evidence that would enable a reasonable jury to conclude that the proffered reasons for Pierce's termination were pretextual.

In light of the Pierce's well-documented persistent performance problems, (<u>see</u>, <u>e.g.</u>, Docket Nos. 32-3, 32-5, 32-6, 32-7, 32-8, 32-9, 32-10, 32-11, 32-12, 32-13, 32-14, 32-15, 32-16, 32-17, 32-18, 32-19, 32-20, 32-21, 32-22, 32-23, 32-25, 32-27, 32-28), that were observed by multiple supervisors, the court finds that, based upon the evidence in the record, a reasonable jury could not conclude that the proffered reasons for Pierce's termination were pretextual. This means that the

plaintiff's termination was not the result of discrimination. Therefore, the court shall grant the defendant's motion for summary judgment.

**IT IS THEREFORE ORDERED** that the defendant's motion for summary judgment, (Docket No. 27), is **granted**.

**IT IS FURTHER ORDERED** that the complaint and this action in its entirety is **DISMISSED**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 16th day of July, 2008.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge
